THE PEOPLE OF THE UNITED STATES IN THE TERRITORY OF UTAH, *Respondents, v.* JOHN J. MAHON, *Appellant,*

CRIMINAL LAW—FORGERY.—On the trial of a party indicted for forging a promissory note, the person whose signature is alleged to have been forged is a competent but not an indispensable witness to prove the forgery.

FORGED SIGNATURE, BY WHOM PROVEN.—The Clerk of such person, who is acquainted with his handwriting, is a competent witness to prove that the signature to the note is a forgery.

ATTORNEY AND CLIENT—PRIVILEGED COMMUNICATIONS.—If a party informs an Attorney and Counselor at Law of his intention to commit a forgery, and asks advice as to the effect thereof, such communication will not be privileged, and the Attorney may be required to disclose it.   The law does not, under such circumstances, recognize the existence of the relation of Attorney and client.

APPEAL from the Third District Court.

The appellant was indicted for forging and uttering a promissory note for $400.00, in the name of one Hugh White, with intent to defraud, &c. He was tried and convicted in the Third District Court, in December last. He appeals to this Court. The facts are sufficiently set forth in the opinion of the Court.

*J. H. McCutchen,* for the Appellant.

*Wm. Carey, U. S. Attorney,* for the People.

McKEAN, C. J., delivered the opinion of the Court.

At the trial in the District Court, one Haynes was called as a witness on the part of the people, and testified that he was the business clerk of Hugh White, and that he knew the handwriting and signature of White. The witness was then shown the promissory note alleged to have been forged, and was asked, by the public prosecutor, if the signature thereto was Hugh White's.

The Defendant's Counsel objected to the question. The Court overruled the objection, the Defendant excepted, and the witness answered, "No, it is not Hugh White's signature." This ruling is claimed by the Appellant to have been erroneous.

Without pausing to inquire whether the grounds of objection should have been stated, let us consider the argument now urged by the Appellant's Counsel, that White, and not his clerk, was the only competent witness, under the circumstances, to prove that the signature to the note was spurious.

In Usher's case; Captain Smith's case; Akehurst's case, and Dr. Dodd's case (2 East's Pleas of the Crown, 999 to 1003), the doctrine laid down would have excluded White as a witness herein, because he would have had an interest in the question of the genuineness of the note. But this Court does not so hold. The question is, however, was the testimony of Haynes improperly admitted.

In Jackson *v.* Phillips, (9 Cow. 112), the Court says : "The deed from Barnes to Fowler being properly in evidence, and showing a title out of the lessors, they had a right to show that the deed was a forgery by proper testimony ; and they contended that Barnes's account book was proper for that purpose, by way of comparison of handwriting. The rule is settled in England, and I believe in this State, that comparison of hands by juxtaposition of two writings, in order to ascertain whether both were written by the same person, is inadmissible."

In Titford *v.* Knott, (2 John Cas. 211) Kent, J., says : "If the witness has no previous knowledge of the hand, he cannot be permitted to decide it in Court from a comparison of hands." But this doctrine has no application to this case. Haynes testified solely from his knowledge of White's hand, and made no comparison of different specimens of writing. In the case last cited, Justice Kent says : "It is usual for witnesses to prove handwriting from previous knowledge of the hand, derived from having seen the person write, or from authenticated papers received in the course of business." This is precisely what Haynes did.

"The proof that the writing is false and counterfeit may be made by the evidence of any person acquainted with the handwriting of the party whose autograph it is pretended to be." (3 Greenleaf on Ev. sec. 106.)

"And it is now well settled, that the person whose signature or handwriting is said to be forged, is a competent witness in a criminal trial, to prove the forgery ; but he is not an indispensable witness, his testimony not being the best evidence which the nature of the case admits, though it is as good as any, and might, in most cases, be more satisfactory than any other." (Ibid.)

"In the Scotch law, the oath of the party whose signature is said to be forged, is considered the best evidence of the forgery. Other evidence is estimated in the following order : 1, That of persons acquainted with his handwriting, and who have seen him write ; 2, that of persons who have corresponded with him, without having

seen him write; 3, a *comparatio literatum* with his genuine writing; 4, that of experts, or persons accustomed to compare the similitude of writing. See Alison's Crim. Law of Scotland, Ch. 15, Sec. 24, p. 412. But in England and the United States, in those different kinds of evidence there is no legal preference of one before another, however differently they may be valued by the jury." (Greenleaf on Ev. Vol. 1, Secs. 84, 576, 581, and Vol. 111, Sec. 106, and notes. See Commonwealth *v.* Smith, 7 Serg. & Rawle, 570-1.) The testimony of Haynes was properly admitted.

At the trial in the Court below, Eugene Lasselles, a member of the Bar, was called as a witness on the part of the people, and the public prosecutor offered to prove by him, that before the note in question was made, the Defendant went to the witness and asked him what would be the effect of making a note and signing another man's name to it to raise some money, and proposed to do so. The witness stated to the Court that what knowledge he had was obtained professionally, and asked to be excused from answering. The Defendant's Counsel objected that the communication sought to be proved was privileged, and could not be disclosed. The objection was overruled, and the witness directed to answer. The Defendant's Counsel excepted. The witness then testified in substance to the facts as stated in Mr. Carey's office; and further, that the Defendant consulted him as to the legal effect of making a note or check in some good man's name, and that he advised the Defendant not to do it, as it would be forgery and contrary to law. It is insisted that the admission of this testimony was contrary to law.

In Chirac *v.* Reinicker (11 Wheat 294; 6 Curtis 596), the National Supreme Court says: "The general rule is not disputed, that confidential communications between client and Attorney are not to be revealed at any time. The privilege, indeed, is not that of the Attorney, but of the client; and it is indispensable for the purpose of private justice. Whatever facts, therefore, are communi-

cated by client to Counsel, solely on account of that relation, such Counsel are not at liberty, even if they wish, to disclose ; and the law holds this testimony incompetent."

This is the general rule.    It applies to all communications "touching matters that come within the ordinary scope of professional employment."    (1 Greenleaf on Ev. Sec. 237).    But do all matters come within the scope of professional employment ?    Are there not matters of such a nature, that the law will not permit the relation of Attorney and client to exist in regard to them?    While a member of the Bar may be Counsel for, and keep the secrets of, one who has committed a crime, can he be permitted to sustain any such relation to one who proposes to commit a crime ?    Were he to attempt to give aid and assistance, in the case last approved, would not the law regard him as an accessory before the fact, rather than as a Counselor at Law ?    Is it not the duty of a member of the Bar, as much as of any other citizen, to expose contemplated crime, so as, if possible, to prevent it ? What do the books say ?

Lord Chief Baron Gilbert says :    "Where the original ground of communication is *malum in se*, as if he be consulted on an intention to commit a forgery or perjury, this can never be included within the compass of professional confidence ; being equally contrary to his duty in his profession, his duty as a citizen, and as a man."    (1 Gilbert's Law of Ev. 277).

Chancellor Walworth says: "The seal of professional confidence, I believe, has never been held to cover a communication made to an Attorney to obtain professional advice or assistance as to the commission of a felony or other crime, which was *malum in se*."

\*    \*    \*    "No one is entitled to the advice or assistance of Counsel, or of an Attorney, to enable him to do an illegal act."    (The Bank of Utica *v.* Masereau, 3 Barb. Ch. P. 598).

27

These two are the only questions raised in this Court; and we are of opinion, both upon principle and authority, that on both points the District Court ruled correctly. The judgment is affirmed.

BOREMAN and EMERSON, J. J., concurred.